UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
IN RE COMBINED WORLD TRADE CENTER     :     **21 MC 103 (AKH)**
AND LOWER MANHATTAN DISASTER SITE     :
LITIGATION (straddler plaintiffs)     :
----------------------------------------------------------------- x
RASHID MUQADDIM,                      :
                                      :
          Plaintiff(s),               :     **COMPLAINT**
                                      :
    - against-                        :     Civil Action No. 08 CV 01657
                                      :
TULLY CONSTRUCTION CO., INC,. TULLY   :
ENVIRONMENTAL INC., TULLY INDUSTRIES, :
INC., TURNER CONSTRUCTION COMPANY,    :     **PLAINTIFF(S) DEMAND A**
BOVIS LEND LEASE, INC., BOVIS LEND LEASE: **TRIAL BY JURY**
 LMB, INC., AMEC CONSTRUCTION         :
MANAGEMENT, INC., BECHTEL ASSOCIATES  :
 PROFESSIONAL CORPORATION, BECHTEL    :
CONSTRUCTION, INC., BECHTEL           :
CORPORATION, BECHTEL ENVIRONMENTAL,   :
INC., VERIZON NEW YORK, INC., HILLMAN :
ENVIRONMENTAL GROUP, LLC,             :
BROOKFIELD FINANCIAL PROPERTIES, INC., :
BFP ONE LIBERTY PLAZA, CO., LLC,      :
                                      :
                    Defendants.       :
-----------------------------------------------------------------x

Plaintiff(s), Rashid Muqaddim, by his attorneys, OSHMAN & MIRISOLA, LLP,

complaining of defendants respectfully alleges:

Plaintiff, Rashid Muqaddim, a citizen of New York, residing at 890 Garrison Avenue, Bronx,

New York 10474, brings this action against TULLY CONSTRUCTION CO., INC,. TULLY

ENVIRONMENTAL INC., TULLY INDUSTRIES, INC., TURNER CONSTRUCTION

COMPANY, BOVIS LEND LEASE, INC., BOVIS LEND LEASE LMB, INC., AMEC

CONSTRUCTION MANAGEMENT, INC., BECHTEL ASSOCIATES

PROFESSIONALCORPORATION, BECHTEL CONSTRUCTION, INC., BECHTEL

CORPORATION, BECHTEL ENVIRONMENTAL, INC., VERIZON NEW

YORK, INC., HILLMAN ENVIRONMENTAL GROUP, LLC, BROOKFIELD FINANCIAL

PROPERTIES, INC., BFP ONE LIBERTY PLAZA, CO., LLC, seeking redress for injuries

suffered in the past, and will continue to suffer, as a result of participation in the vicinity of

World Trade Center site in the aftermath of September 11, 2001.

## I. DEFINITIONS

The following definitions are employed for the purposes of this Complaint, and any

subsequent Complaints filed hereunder, unless otherwise specified:

1.     "Operations" includes cleaning, debris removal, carting, excavation and abatement of
       hazardous substances performed in and/or around the World Trade Center site.

2.     "Work" includes all activities undertaken by Plaintiff as part of Plaintiff's operations at
       Plaintiff's work locations in and/or around the World Trade Center site.

3.     "Hazardous substances" include but are not limited to, substances that have toxic,
       carcinogenic, teratogenic, and mutagenic effects on bodily systems.  Hazardous
       substances present at Plaintiff's work locations were and are in the form of dust, fumes,
       particulate matter, vapors, gases, mists, fibers and liquids. The specific hazardous
       substances Plaintiff was exposed to include, but are not limited to, asbestos, fiberglass,
       crushed glass, silica, pulverized concrete, lead, mercury, cadmium, chromium, beryllium,
       iron, aluminum and other heavy metals, poly chlorinated biphenyls (PCBs), dioxin
       compounds, furons, Freon compounds, poly cyclical aromatic hydrocarbons (PAHs),
       benzene and other volatile organic compounds, arsenic, sulfur, acidic aerosols, and other
       toxic substances and hazardous decomposition by-products.

## II. INTRODUCTION

**4.**     Upon the collapse of the Twin Towers and Seven World Trade Center, known and
unknown toxic substances were spread throughout the World Trade Center Site and the
surrounding areas, portions of which, were owned, operated, maintained, controlled,
supervised, and/or managed by the Defendant. Those areas remained dangerous,
defective, hazardous, toxic, unguarded, unsupervised, and unprotected for multiple days,
weeks, and/or months thereafter.  Plaintiff participated in debris removal and/or,
hazardous substance abatement, and/or cleaning of buildings in the immediate vicinity of
the World Trade Center Si**te beginning on or about September 28, 2001 through on or
about February 22, 2005.**

5.     The nature of this action is to recover money damages for the personal injuries sustained
by the Plaintiff as a result of the carelessness, recklessness and negligence of Defendant
in failing to provide the Plaintiff with a safe place to work in failing to provide the
Plaintiff with proper, appropriate, and legally required respiratory protection, personal
protective equipment, decontamination equipment and procedures, and training to prevent
exposure to hazardous substances at plaintiff's work locations.

6.     Plaintiff also seeks recovery for the Defendant(s)' failure to provide appropriate
respiratory protection and appropriate protective clothing and equipment, and to properly
monitor air quality and to notify the Plaintiff of the dangerous levels of toxins and
contaminants in the air at the Work locations. Plaintiff also seeks recovery for the
Defendant(s)' failure to comply with one or more of the following: the World Trade
Center Environmental Health and Safety Plan(s); the Labor Law of the State of New
York; the New York State Industrial Code; the requirements of the Occupational Safety

& Health Administration; and other applicable federal, state and local statutes, law, rules, regulations and ordinances.

### III. JURISDICTION

7.    The United States District Court for the Southern District of New York has original jurisdiction over the Plaintiff's claims pursuant to §408(b)(1) of the Air Transportation Safety & System Stabilization Act of 2001, 49 U.S.C. §40101 ("the Act").

### IV. VENUE

8.    Pursuant to the Act, venue is proper in this judicial district.

### V. PARTIES

### THE PLAINTIFF(S)

9.    Plaintiff participated in the clean up, debris removal, hazardous substance abatement, maintenance and/or repair work in vicinity of the World Trade Center Site at the locations **identified in Paragraph 11 beginning on or about September 28, 2001 through on or about February 22, 2005.**

10.    **Beginning on or about September 28, 2001  through on or about February 22, 2005, upon information and belief, plaintiff was employed by Turner Construction, Bovis Lend Lease Inc, Tishman Interiors Corp., and Pinnacle, and Union Local 79 as a laborer in work within and/or outside the following locations, collectively known as the "work locations":**

**a) 140 West Street, New York, New York (Verizon Building)- With Tishman Interiors Corp: Beginning on or about December 14, 2001 through on or about April 8, 2002 and again beginning on or about July 30, 2002 through on or about August 12, 2003.**

**b) One Liberty Plaza, New York, New York:**

**c) World Trade Center building #7: With Turner Construction, beginning on or about September 27, 2001 through on or about October 10, 2001.**

**d) worked on manifest on trucks in Staten Island and 59th Street with Bovis Lend Lease, Inc., beginning on or about October 10, 2001 through on or about December 7, 2001.**

Other employer(s) and/or work location(s) may exist, but are presently unknown to plaintiff.

11.    Plaintiff sustained serious physical illnesses and injuries as a result of exposure to hazardous substances during plaintiff's work at the work locations.

12.    Plaintiff's injuries are as a result of exposure to hazardous substances at the work locations which include, but are not limited to, the following:

**(a) Respiratory Injuries:.none presently known**

 **(b) Digestive Injuries: none presently known**

**©) Cardiopulmonary Injuries: none presently known**

**(d) Cancer Injuries: none presently known**

**(e) Other Injuries: acute depressed chronic heart failure (diagnosed on June 2005)**

The foregoing is not an exhaustive list of injuries that may be alleged.

### THE DEFENDANT(S)

13.    **With reference to the World Trade Center, the defendant AMEC CONSTRUCTION MANAGEMENT, INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.**

14.    **With reference to the World Trade Center, the defendant BECHTEL**

ENVIRONMENTAL, INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.

15. With reference to the World Trade Center, the defendant BECHTEL CORPORATION, was an owner at the subject property and/or in such relationship as the evidence may disclose.

16. With reference to the World Trade Center, the defendant BECHTEL CONSTRUCTION, INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.

17. With reference to the World Trade Center, the defendant BECHTEL ASSOCIATES PROFESSIONAL CORPORATION, was an owner at the subject property and/or in such relationship as the evidence may disclose.

18. With reference to the World Trade Center, the defendant BOVIS LEND LEASE, INC, was an owner at the subject property and/or in such relationship as the evidence may disclose.

19. With reference to the World Trade Center, the defendant BOVIS LEND LEASE LMB, INC. was an owner at the subject property and/or in such relationship as the evidence may disclose.

20. With reference to the World Trade Center, the defendant TULLY CONSTRUCTION CO., INC, was an owner at the subject property and/or in such relationship as the evidence may disclose.

21. With reference to the World Trade Center, the defendant TULLY ENVIRONMENTAL INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.

22.    **With reference to the World Trade Center, the defendant TULLY INDUSTRIES, INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.**

23.    **With reference to the World Trade Center, the defendant TURNER CONSTRUCTION COMPANY,  was an owner at the subject property and/or in such relationship as the evidence may disclose.**

24.    **With reference to 140 West Street, New York, New York, the defendant VERIZON NEW YORK, INC., was an owner at the subject property and/or in such relationship as the evidence may disclose.**

25.    **With reference to 140 West Street, New York, New York, the defendant HILLMAN ENVIRONMENTAL GROUP, LLC, was an owner at the subject property and/or in such relationship as the evidence may disclose.**

26.    **With reference to One Liberty Plaza, New York, New York, the defendant BROOKFIELD FINANCIAL PROPERTIES, INC, was an owner at the subject property and/or in such relationship as the evidence may disclose.**

27.    **With reference to One Liberty Plaza, the defendant, BFP ONE LIBERTY PLAZA CO., LLC., was an owner at the subject property and/or in such a relationship as the evidence may disclose.**

28.    At all times herein mentioned, Defendant owned the World Trade Center site and/or surrounding premises.

29.    At all times herein mentioned, Defendant leased the World Trade Center site and/or surrounding premises.

30.     At all times herein mentioned, Defendant maintained the World Trade Center site and/or

surrounding premises.

31.    After September 11, 2001, the Defendant acted in its capacity as general contractor, and/or subcontractor, and/or construction manager responsible for the demolition, planning, reconstruction, renovation, debris removal, hazardous substance abatement and/or alteration performed at the World Trade Center site and/or surrounding premises.

32.    After September 11, 2001, Defendant(s) employed their own employees, construction companies, engineers, managers, contractors and subcontractors responsible for demolition, construction, renovation, alteration, and all work performed at their respective buildings.

## VI . GENERAL ALLEGATIONS

33.    This case arises out of injuries the Plaintiff sustained while working at the Work Location(s) in the aftermath of the terrorist attacks of September 11, 2001.

### General Conditions At World Trade Center Site

34.    Before September 11, 2001, the buildings at the WTC generated large amounts of hazardous waste, as defined by the Resource Conservation and Recovery Act (RCRA), producing over 10,000 pounds of hazardous waste per year. The buildings contained thousands of computers, fluorescent light fixtures, stored chemicals, underground and above ground storage tanks holding tons of diesel fuel and fuel oil, electrical transformers laden with PCB-containing oil, asbestos, and other hazardous substances.[1] Defendants knew that the collapse of these buildings would release these toxic substances, presenting a grave health risk to all who were exposed.

---

[1]  See Burton Transcript., at pp. 49-51.

35.    Following the collapse of the World Trade Center buildings on September 11, 2001, there existed a dangerous, defective, hazardous, unguarded, unsupervised, unprotected, and unsafe toxic condition at the World Trade Center Site and work locations.

36.    The air and the area in, around, on, and at the World Trade Center Site, including the Plaintiff's work locations was polluted and contaminated with toxic hazardous substances.

37.    Workers were exposed to enormous quantities of toxic, carcinogenic, mutagenic, and teratogenic hazardous substances, generated by the collapse of the WTC buildings and smoldering fires that lasted more than three months, reaching temperatures as high as 1800 was and is a duly organized Fahrenheit.[2]

38.    The ongoing fires burning at the World Trade Center Site produced a mixture of toxic gases and ultra-fine particulates.  Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[3]

39.    The levels and types of human exposures resulting from this mixture of materials, dust, toxins, and a smoldering fire that lasted more than three months and reached temperatures as high as 1800 was and is a duly organized Fahrenheit was unprecedented.[4] Dust and vapors blanketed work site, as well as, the entire area surrounding the World Trade Center Site, including work locations. The ongoing fires burning at the World

---

[2]  Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

[3]  Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[4]  Paul J. Lioy, "Characterization of the Dust/Smoke Aerosol that Settled East of the World Trade Center in Lower Manhattan After the Collapse of the WTC 11 September, 2001, "Envtl. Health Perspectives 110(7):703-14 (July 2002), p. 703.

Trade Center Site produced a mixture of toxic gases and ultra-fine particulates that had never before been seen.  Air samples taken from a rooftop one mile north of the World Trade Center Site showed "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[5]

40.    The  Defendant, through its employees, representatives, agents, contractors, and other entities, knew that protection from hazardous substances was necessary at Plaintiff's work locations.[6]

41.    The official Report of the City Council Committee on Environmental Protection acknowledged: "In the weeks following the collapse of the Twin Towers, significant quantities of smoke, dust, asbestos, silica, dioxins, polychlorinated biphenyls (PCBs), lead, mercury, cadmium and other heavy metals, furans, volatile organic compounds, polycyclical aromatic hydrocarbons, benzene[7] and various other potentially hazardous substances were released into the air."[8]

1)    Upon information and belief, the  Defendant knew that exposure to these harmful substances could cause a plethora of health problems for the WTC workers.

---

[5]  Thomas Cahill, et al., "Analysis of Aerosols from the World Trade Center Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies," New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[6]On September 21, 2001 and October 19, 2001, the City DOH, through the Commissioner of Health, issued two orders. These orders established controls on building use by City personnel and mandated specific protective actions be taken when persons and vehicles left the WTC Site: "It is hereby ordered that all persons leaving the WTC site shall follow personal hygiene protocols, including but not limited to...removal or HEPA vacuuming of work clothes...washed...SeeCITYCM3-00026317-18 and 00041996-97;  It is further ordered that all vehicles leaving the WTC site be spray City DOH Orders of 10/19/01 and 9/21/01. Notably, these protocols were NOT followed or enforced.

[7]  See OSHA-NY00045060: "Air samples taken within the plume have contained high mixtures, at times, of compounds like benzene, which has been linked - for long term exposures - to anemia and leukemia."

[8]  See CITY CM3-000025293: Air Quality and Environmental Impacts Due to the WTC Disaster, December 2001.

42.    Upon information and belief, the Defendant was aware that exposure to carbon monoxide could cause chronic angina and cardiac dysfunction.

43.    Upon information and belief, the Defendant was aware that exposure to chromium metal and insoluble salts could cause chronic nasal septum perfection, liver and kidney damage, as well as cancer.

44.    Upon information and belief, the Defendant was aware that exposure to Crystalline Silica (as respirable dust) could cause progressive respiratory symptoms, silicosis and cancer.

45.    Upon information and belief, the Defendant was were aware that exposure to Freon (R-22) could cause cardiac arrhythmia, cardiac arrest and asphyxiation.

46.    Upon information and belief, the Defendant was aware that exposure to Lead (metallic and inorganic) is linked to decreases in muscle strength, abdominal pain, severe constipation, nausea, vomiting, paralysis of the wrist joint, kidney damage and nervous system disorders.

47.    Upon information and belief, the Defendant was aware that exposure to mercury compounds could cause pneumonitis, tremor and gastrointestinal distress.

48.    Upon information and belief, the Defendant was aware that exposure to PCBs could cause chemical acne, black heads, dark patches on skin, liver damage, digestive disturbances, impairment of the immune system and cancer.

49.    Information as to the hazardous conditions present at Plaintiff's work locations and the toxic exposures were never communicated to workers or to treating physicians.[9]

---

[9]  See February 21, 2002 EPA National Ombudsman First Investigative Hearing on WTC Hazardous Waste Contamination. Experts and private citizens testified that the federal government, state government and city government had (1) not been operating in compliance with the laws of the United States, and (2) had been providing the public, firemen and police officers with erroneous information.

50.     From the time of the collapse of the buildings on September 11, 2001, and continuously thereafter, the Defendant was aware of the danger posed to Plaintiff and all others lawfully present at the work locations by exposure to toxins, hazardous substances, particulate matter and contaminants in the air and on surfaces.

51.     The ongoing fires burning at the WTC Site produced a mixture of toxic gases, fumes, vapors and ultra-fine particulates. Indeed, air samples taken from a rooftop one mile north of the WTC Site demonstrated "unprecedented ambient levels" of fine particulate matter, sulfur, acidic aerosols, heavy metals, and other dangerous compounds.[10]

52.     Shortly after September 11, 2001, tests conducted by the United States Geological Survey ("USGS") determined that the dust at the WTC Site was highly caustic, with a demonstrated capacity of burning tissue in the throat, eyes, and nasal passages. The dust was determined to have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and comparable to ammonia. Some of the dust samples taken by the USGS on September 17-18, 2001, registered higher than 11.0 on the pH scale—this level was as caustic as liquid drain cleaners.[11]

53.     Days after September 11, 2001, the New York Environmental Law & Justice Project sent dust samples from several lower Manhattan locations to two respected laboratories. One

---

[10]   See Thomas Cahill, et al., "Analysis of Aerosols from the WTC Collapse Site, New York October 2 to October 30, 2001." Aersol Sci., & Tech. 38:165-183 (2004) p. 182; Laurie Garrett, "A 'Chemical Factor' in Skies", New York Newsday (September 11, 2003). Dr. Cahill took more than 8,000 air samples, starting October 3, 2001, from a rooftop on Varick Street in Manhattan.

[11]   See Clark, et al., "Environmental Studies of the WTC Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the WTC Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

such sample showed a 90% fiberglass content.[12]  Fiberglass consists of glass fibers that are small enough to be inhaled and cause respiratory irritation in humans and fibrosis (a scaring or thickening of tissues deep in the lung, impairing respiration) in animals. Glass fibers are also highly irritating to the eyes.

54.     The New York City Department of Environmental Protection ("NYDEP") conducted numerous tests that determined that the air and World Trade Center Site was contaminated and polluted with the aforementioned toxic Dust. Shortly after September 11, 2001, tests conducted by the United States Geological Survey ("USGS") determined that the dust at the World Trade Center Site was highly caustic and thus capable of burning moist tissue in the throat, eyes, and nasal passage. This dust was determined to have a pH value of 9.0 to 11.0, indicating that the dust was highly alkaline and comparable to ammonia. Some of the dust samples taken by the USGS on September 17-18, 2001, registered higher than 11.0 on the pH scale—as caustic as liquid drain cleaners.[13]

**Lack of Worker Safety**

55.     The  Defendant, its employees, representatives, agents, and/or contractors failed to provide Plaintiff with a safe and healthy work place, the required personal protective equipment, including respiratory protection, chemical impervious clothing,

---

[12]  Juan Gonzalez, "Health Hazards in Air Worry Trade Center Workers," Daily News (September 28, 2001); Juan Gonzalez, Fallout., p. 6. The sample was taken at the corner of Church and Vesey Streets, at the northeast corner of the WTC Site.

[13] Roger Clark, et al., "Environmental Studies of the World Trade Center Area After the September 11, 2001 Attack" (USGS Open File Report OFR-01-0129) (http://pubs.usgs.gov/of/2001/ofr-01-0429/>), p.4; Philip Landrigan, M.D., et al., "Heath and Environmental Consequences of the World Trade Center Disaster, "Envtl Health Perspectives 112(6):73139, 732 (May 2004), at p.16.

decontamination facilities, hazardous materials training, respiratory fit testing and proper medical surveillance.

56.    The  Defendant, its employees, representatives, agents, and/or contractors failed to perform the required atmospheric monitoring in and around the WTC site and Plaintiff's work locations.  Any atmospheric monitoring performed by the Defendant was inadequate to identify the true extent of the risk faced by the Plaintiff and to provide adequate information from which to determine the proper protective measures and equipment needed to adequately protect the health and safety of the Plaintiff.

57.    The Defendant, its employees, representatives, agents, and/or contractors on their own, failed to implement and adopt the appropriate testing, sampling and monitoring methods, protocols, and/or procedures that they were legally mandated to perform to properly identify, characterize, and quantify the nature and concentration of hazardous substances Plaintiff was exposed to at plaintiff's work locations.

58.    The Defendant, its employees, representatives, agents, and/or contractors on their own, incorrectly tested samples and analyzed and evaluated atmospheric conditions by the use of faulty tests.

59.    The analytical data, if properly evaluated, would have revealed that there were dangerously high concentrations of total volatile organic compounds, including but not limited to benzene, that far exceeded the protection limits provided by air purifying cartridge respirators. These levels required, instead, supplied air and self-contained breathing apparatus (SCBA).

60.    Benzene levels alone required the use of Level A or B personal protective equipment, including self-contained breathing apparatus and respirator fit tests, as required by the

OSHA HAZWOPER standard, 29 CFR 1910.120. Plaintiff should have been fully encapsulated to prevent dermal exposures to hazardous substances. Accordingly, the Plaintiff was not provided with timely or adequate warnings about the dangers that existed at her Work locations.

61.    Plaintiff was not provided with or required to use personal protective equipment and/or other safety equipment necessary to provide adequate protection against the dangers at plaintiff's Work locations. Among other things:

a.    Plaintiff was not provided with, or required to use, the necessary and legally mandated respiratory protection while working in and around the World Trade Center site and plaintiff's work locations;

b.    Plaintiff received inadequate equipment that was entirely inappropriate and failed to protect the Plaintiff's health and safety and comply with relevant legal requirements. For example, the Plaintiff was not provided with or required to use supplied air systems or self contained breathing apparatus (SCBA), even when and where the atmospheric data, properly evaluated, revealed that there were dangerous levels and concentrations of total volatile organic compounds, including but not limited to benzene, that exceeded the legal permissible exposure levels, and that were far beyond the protection limits of any air purifying cartridge respirator;

c.    Plaintiff was never provided with, or required to use any personal protective equipment that met the requirements of Level A or B protection, including self-contained breathing apparatus and respirator fit tests, as required by the OHSA HAZWOPER standard, 29 CFR 1910.102;

d.  Plaintiff was never provided with or required to wear the legally mandated personal protective clothing that would prevent dermal exposures to the hazardous substances present at Plaintiff's work locations;

e.  Plaintiff was never provided with or required to wear the legally mandated eye protection to prevent injuries and/or absorption through the eye membrane of the hazardous substances present in Plaintiff's work locations;

f.  Plaintiff was never provided with or required the required decontamination facilities, equipment and training required to remove the hazardous substances that accumulated on their persons, clothing and personal possessions while working at plaintiff's work locations;

g.  Any safety equipment provided to Plaintiff by the Defendant, including but not limited to, personal protective equipment and respiratory protection, was not adequately selected, maintained, cleaned, and/or serviced. This included the failure to provide appropriate replacement cartridges for respirators when necessary.

70. Any respiratory protective equipment the Defendant provided or recommended to Plaintiff was not properly fit tested or otherwise made suitable for use at the World Trade Center site. Among other things, Plaintiff did not receive the legally mandated quantitative and/or qualitative fit-testing and training as required by the Respiratory Protection Standard, 29 CFR 1910.134.

71. Plaintiff was not provided with the legally mandated safety and health training to ensure plaintiff's safety at Plaintiff's work locations. Among other things:

a.  Plaintiff was never provided with or required to attend any HAZWOPER and/or

chemical safety and health training before or while performing work at Plaintiff's

work locations;

b.      Plaintiff was never provided with or required to attend any Hazard

Communication training before or while performing work at the World Trade

Center site;

c.      Plaintiff was never provided with or required to attend any WTC site specific

safety and health training before or while performing work at the Plaintiff's work

locations;

d.      Plaintiff was never provided with or required to attend any personal protective

equipment training before or while performing work at Plaintiff's work locations;

e.      Plaintiff was never provided with or required to attend any WTC site respiratory

protection training before or while performing work at Plaintiff's work locations.

72. The  Defendant, its employees, representatives, agents, subcontractors and/or contractors

on their own, failed to implement and enforce any and all required environmental and

occupational safety and health laws, statutes, standards, regulations, rules and/or

procedures, including, but not limited to, requirements for the use of personal

protective equipment, respiratory protection and worker safety and health training.

73. The  Defendant, its employees, representatives, agents, and/or contractors on their own,

failed to implement the proper engineering controls, pollution abatement measures, and

other operational steps to prevent worker exposure to the myriad of hazardous substances

present in the areas where Plaintiff worked and was lawfully present at plaintiff's work

locations.

74. The Defendant, its employees, representatives, agents, and/or contractors on their own,

and in conjunction with other parties failed to adopt and implement the required medical

surveillance programs for the hazardous substances to which Plaintiff was exposed.

### Plaintiff's Injuries

75. By reason of the foregoing, the Plaintiff was exposed to hazardous substances at

plaintiff's work locations.

### Consequential Damages

76.     In consequence of said exposure, Plaintiff sustained severe and permanent personal

injuries and/or disability; was rendered sick, sore, lame, and has been maimed and/or

disabled; and/or will be permanently caused to suffer pain, suffering, inconvenience, and

other effects of such injuries. In particular, plaintiff suffers from: **acute depressed**

**chronic heart failure, diagnosed on June 2005.** The foregoing is not an exhaustive list

of injuries that may be alleged.

77.  In addition, Plaintiff incurred, and in the future will necessarily incur further, doctor,

hospital, physical therapy, and/or medical expenses in an effort to diagnose and be cured

of said injuries; have been unable to continue, engage in, and or attend to their usual

vocations, and/or activities, and have suffered, and will necessarily suffer additional, loss

of time and earnings from employment.

### Fear of Cancer

78.  Plaintiff has a reasonable fear of developing cancer as a result of said exposure. With

reasonable probability, the prospective, feared, and anticipated consequences may be

expected to flow from the past harm.

79.  Plaintiff will incur future expenses for medical monitoring and, as a result, seek payment

of their related medical expenses as an element of the consequential damages.

80.  The degree of probability that the Plaintiff will develop cancers is such that there is a reasonable certainty that such cancers will develop at some future date, thus entitling Plaintiff to recover here for apprehended consequences that are not presently manifested.

81. A rational basis exists between Plaintiff's exposure to the aforesaid dust, toxins, and contaminants, and Plaintiff's currently manifested fear of developing cancer in the future.

**Role of  Defendant**

82.  On or about September 11, 2001, and continually thereafter, the Defendant, its employees, representatives, agents, and/or contractors were aware of the danger of exposure to dangerous substances, both known and unknown, in the air and dust at Plaintiff's Work locations. The Defendant had actual or constructive notice of the dangerous and defective conditions existing at the Work locations.  After September 11, 2001 the work locations were not reasonably safe.

83. The Defendant was negligent in allowing the unsafe condition to exist without warning and this was a substantial factor in causing plaintiff's injuries.

84. The Defendant knew of the unsafe conditions at Plaintiff's work locations long enough before Plaintiff's injuries developed to have permitted them, in the exercise of reasonable care, to have the unsafe conditions corrected and/or warned plaintiff and/or take other suitable precautions. The Defendant did not do so. To the extent that the Defendant did not know of hazardous conditions on site, in the exercise and use of reasonable care, they should have known of same, and taken steps to correct the conditions and/or warn plaintiff.

85. As set forth below, however, Defendant failed to take adequate measures to inform the Plaintiff of that danger, to take adequate steps to abate or reduce that danger, or to ensure

that Plaintiff was provided with the equipment, information, and training necessary for

them to avoid or minimize that danger, in violation of their legal duties.

### Causes of Action

### A.  As and For A First Cause of Action: Pursuant to The New York State Labor Law

86. Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this

Complaint as if set forth more fully at length herein, and further allege the following.

87.  The Defendant, its employees, representatives, agents, and/or contractors had an

obligation, in accordance with Section 200 of the Labor Law of the State of New York, to

provide a reasonably safe place to work for persons lawfully performing work at

Plaintiff's work locations. That duty arose from the Defendant's long term ownership,

and/or management, and/or control, and/or leasehold, and/or operation, and/or

supervision of the work locations, together with:

(a) the Defendant's actual or constructive notice of the dangerous

condition of the Plaintiff's work locations, as set forth above;

and/or

(b) the Defendant's control or supervision, and/or lack of

supervision over some aspects of the work performed at the

Plaintiff's work locations, as set forth above.

88. The Defendant violated its duty under Section 200 of the Labor Law by failing to provide

a reasonably safe place to work for persons lawfully performing work at their respective

buildings. Among other things, the Defendant failed to ensure:

a.      that the Plaintiff was notified of the dangerous substances in the

air, dust, and on the surfaces of their respective buildings;

b.     that the Plaintiff was provided adequate personal protective equipment, including, but not limited to: protective clothing, masks, respirators, and goggles;

c.     that the Plaintiff was provided other necessary work equipment, safety devices, and/or apparatus, as well as cleaning supplies and decontamination equipment;

d.     that adequate workplace safety rules were in place – including rules requiring the use of personal protective equipment – were issued, enforced, and complied with;

e.     that there was adequate monitoring air quality of their respective buildings before, during and after the commencement of the Plaintiff's work at the site was performed;

f.     that atmospheric contamination was minimized or avoided;

g.      that effective engineering controls were implemented at their respective buildings;

h.     that the conditions at their respective buildings and/or the Plaintiff's particular work areas therein were subject to appropriate safety surveillance and/or inspection;

i.     that the Plaintiff's exposure to dangerous substances, which The Defendant knew or should have known would detrimentally affect the safety and/or health of Plaintiff, was adequately monitored.

89.  As a result of the Defendant's violation of Section 200 of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth herein.

90.  The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of the

Defendant, without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

91. The Defendant is liable for all of Plaintiff's damages, including, but not limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601, because the Defendant acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of Plaintiff's injuries (see CPLR §1602(11)) and with reckless disregard for the safety of others (see CPLR §1602(7)).

### B. As and For a Second Cause of Action: Pursuant to Labor Law 241(6).

92. Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this Complaint as if set forth more fully at length herein, and further allege the following.

93. As owner, and/or manager, and/or controller, and/or leaseholder, and/or operator, and/or supervisor of the work locations in the immediate vicinity of the World Trade Center site, the Defendant, at all relevant times, had a non-delegable duty under Labor Law §241(6) of the State of New York, to ensure that all areas in which debris removal, construction, excavation and/or hazardous substance abatement was being performed were so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

94. The Defendant violated its obligations under Section 241(6) of the Labor Law by failing to ensure that persons frequenting the premises or performing the Work at the work locations were provided with a worksite that was so constructed, shored, equipped guarded, arranged, operated and conducted as to provide reasonable and adequate

protection and safety to such persons.

95. The Defendant failed to comply with the applicable provisions and requirements of the New York State Industrial Code, including but not limited to §§ 23-1.5, 231.7, 23-1.8, 23-1.9, 23-1.25, 23-1.26, 23-2.1; Article 2, §27-a, Article 28, 12 NYCRR §820.4; General Municipal Law of the State of New York, §§205-e, 205-a; The Occupational Safety and Health Act, 29 U.S.C. §§ 654 et. Seq.; Occupational Safety and Health Administration, (OSHA) standards, including but not limited to, 29 C.F.R. §1910 Subparts H, I, J, K and Z, and specifically 29 C.F.R. §§1910.38, 1910.120, 1910.132-134; 1910.146; 1910.156; 1910.1001; 1910.1025; 1910.1027; 1910.1000, and 1910.1200, 29 C.F.R. §1926 Subparts C, D, E, F, G, H, I, J, and Z. and other applicable Federal, State, local, rules, regulations, ordinances and statutes.

96. As a result of the Defendant's violation of Section 241(6) of the Labor Law, the Plaintiff was exposed to dangerous substances and suffered injuries, as set forth herein.

97. The Plaintiff's injuries are the direct and proximate result of the carelessness, negligence, gross negligence, wanton, and/or willful disregard and/or acts on the part of the Defendant, without any fault, want, care, culpable conduct, and/or negligence on the part of the Plaintiff contributing thereto.

98. The Defendant is for all of Plaintiff's damages, including, but not limited to Plaintiff's noneconomic loss, irrespective of the provisions of the CPLR §1601, because the Defendant(s):

1)   violated a provision of Article 10 of the Labor Law, specifically Section 241(6) (see CPLR 1602(8));

2)   owed the Plaintiff a non-delegable duty of care (see CPLR 1602(2)(iv));

3)      is vicariously liable for the negligent acts and omissions of any other and/or others who may have caused or contributed to the plaintiff's damages (see CPLR 1602(2)(iv));

4)      acted knowingly or intentionally, and in concert, to cause the acts or failures which are a proximate cause of plaintiff's injuries (see CPLR p1602(11)); and

5)      acted with reckless disregard for the safety of others (see CPLR 1602(7)).

### C. As and For a Third Cause of Action: Based Upon Common Law Negligence

99. Plaintiff repeats, reiterates and realleges each and every other paragraph contained in this Complaint as if set forth more fully at length herein, and further allege the following.

100.      Defendant owed Plaintiff a common law duty to provide a reasonably safe place to work for persons lawfully performing work at the work locations, as set forth herein.

101.      Defendant owed the Plaintiff a duty to exercise reasonable care in the actions it undertook at and relating to the Work locations. This included, among other things, providing information to the Plaintiff regarding the safety of the Work locations, including the level of dangerous substances in the air and on the site, and the level of risk arising from not properly using personal protective equipment, such as respirators.

102.      Defendant violated its common law duty of due care with respect to the Plaintiff in this case by acting with carelessness, negligence, gross negligence, wanton, and/or willful disregard for the safety and rights of the Plaintiff. Among other things, Defendant violated its duties through the acts and omissions set forth herein.

WHEREFORE, judgment is demanded against Defendant for compensatory damages, jointly and severally with the other defendants in this case, in a sum to be determined by a jury.

# JURY TRIAL DEMAND

Plaintiff demands that all issues of fact in this case be tried to a properly empanelled jury.

Dated: January 24, 2008
New York, New York

OSHMAN & MIRISOLA, LLP
Attorneys for Plaintiff

By: _/s/ David L. Kremen__
David L. Kremen (DK 6877)
42 Broadway, 10th Floor
New York, New York 10004
(212) 233-2100

**Defendant(s)' addresses:**
TULLY CONSTRUCTION CO., INC,.
127-50 Northern Blvd.
Queens, NY 11368

TULLY ENVIRONMENTAL INC.
127-50 Northern Blvd.
Queens, NY 11368

TULLY INDUSTRIES, INC.
127-50 Northern Blvd.
Queens, NY 11368

TURNER CONSTRUCTION COMPANY
375 HUDSON ST.
NEW YORK, NEW YORK, 10014

BOVIS LEND LEASE, INC.
200 PARK AVE, 9TH FLR
NEW YORK, NEW YORK, 10166

BOVIS LEND LEASE LMB, INC.
200 PARK AVE, 9TH FLR
NEW YORK, NEW YORK, 10166

AMEC CONSTRUCTION MANAGEMENT, INC.
2200 FLETCHER AVENUE / 6TH FL
FORT LEE, NEW JERSEY, 07024

BECHTEL ASSOCIATES PROFESSIONAL CORPORATION
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL CONSTRUCTION, INC.
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL CORPORATION
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

BECHTEL ENVIRONMENTAL, INC.
50 BEALE ST
SAN FRANCISCO, CALIFORNIA, 94105-1895

VERIZON NEW YORK, INC.
 140 West Street, 29th Floor,
New York, NY 10007

HILLMAN ENVIRONMENTAL GROUP, LLC,
1600 Route 22 E,
Union City, NJ 07087

BROOKFIELD FINANCIAL PROPERTIES, INC.,
3 World Financial Center,
New York, NY 10281

BFP ONE LIBERTY PLAZA, CO., LLC
3 World Financial Center,
New York, NY 10281